**2023 IL 128957**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128957)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
DANTE ANTWAN WEBB, Appellant.

*Opinion filed November 30, 2023.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Dante Antwan Webb, was convicted of cannabis trafficking (720 ILCS 550/5.1(a) (West 2018)), possession of cannabis with intent to deliver (*id.* § 5(f)), and possession of cannabis (*id.* § 4(f)). The McLean County circuit court merged the possession counts into the trafficking count and sentenced defendant to 14 years' imprisonment. On appeal, defendant argued that his trial counsel was

ineffective for failing to move to suppress on the ground that the officer lacked probable cause to search defendant's semitrailer. The Appellate Court, Fourth District, affirmed defendant's conviction and sentence. 2022 IL App (4th) 210726-U. For the reasons set forth below, we affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3       The charges against defendant arose from a traffic stop on March 24, 2018. Prior to trial, defendant filed a motion to suppress evidence of cannabis recovered from the cabin of the semitrailer truck that defendant was driving at the time of his arrest, as well as to suppress statements defendant made after his arrest. With regard to the cannabis, defendant's motion to suppress argued that the warrantless search of defendant's semitrailer was unlawful because (1) the police officer did not have a reason to stop defendant, (2) once the officer stopped defendant, he improperly prolonged the stop in order to conduct a canine drug sniff, and (3) the subsequent search of the semitrailer violated the fourth amendment to the United States Constitution (U.S. Const., amend. IV).

¶ 4       On October 20, 2020, a hearing was held on defendant's motion to suppress. The facts relevant to the instant appeal are as follows. Sergeant Jonathan Albee of the McLean County Sheriff's Office testified that on March 24, 2018, he was on duty as a deputy officer in the patrol division and observed a white truck tractor pulling a partially loaded car hauler semitrailer. Albee noticed that the vehicle had no driver's side markings indicating the company name or the Department of Transportation (DOT) number, as required by federal motor carrier safety regulations. Albee also noted that the car hauler was only partially loaded with four vehicles, rather than a full load, which Albee found unusual because trailers are expensive to operate. Albee pulled out after the vehicle and noticed there was no registration displayed on the trailer. Albee then activated his emergency lights and pulled defendant over.

¶ 5       Albee approached the vehicle on the passenger side and asked defendant for permission to step up and speak with him. Defendant agreed. Albee asked defendant if he had a codriver with him. Defendant said no. Albee testified that defendant appeared to be in a state of panic. Defendant's movements were very animated. Defendant would stand up, then sit back down. Albee explained that

generally, when he stops a truck, the driver has a binder put together with a cab card, vehicle insurance information, and other documents. Defendant had nothing put together and was very disorganized. Defendant gave Albee information that Albee did not request, including bills for tire repairs and that type of thing. Albee had to remind defendant that all he needed was defendant's driver's license, insurance information, and cab card. Albee testified that defendant also volunteered that he had been stopped several times during his trip and that the vehicle had been checked for drugs. Albee found that statement to be "bizarre" and out of the norm.

¶ 6        Albee asked defendant to meet him in front of defendant's vehicle. Albee explained that he wanted to compare the cab card with the displayed registration. Albee said that defendant gave him a cab card that was Illinois apportioned, but the displayed license plate was a California plate that did not match the cab card. At this point, Albee reasonably believed that defendant was involved in some type of criminal activity. Albee requested another unit to respond to the location for assistance.

¶ 7        Defendant accompanied Albee back to Albee's squad car and sat in the front passenger seat. Albee began writing a written warning and tried to run the license plate on defendant's semitrailer. At this point, Deputy Andrew Erickson arrived on the scene and took over the enforcement action so that Albee could perform a free air sniff test with his canine partner. The canine had been working for approximately 10 years and was trained to alert to crack cocaine, methamphetamine, heroin, ecstasy, and marijuana. Albee's canine began the free air sniff at the rear of the vehicle and worked to the front. When the canine was at the rear tandems of the vehicle, Albee observed a change in the canine's behavior and odor recognition. The canine also responded near the "dog box," which is right behind the driver's seat. Albee then secured the dog and informed defendant that there had been a positive alert on the trailer. Albee told defendant that he was going to search the vehicle and asked defendant if there was anything in the vehicle that would startle Albee. Defendant acknowledged that he had someone with him in the trailer, later identified as Darrell McClain. Albee had McClain exit the vehicle and then performed a probable cause search. The search revealed an unlicensed firearm and a substance later determined to be cannabis. The parties stipulated at defendant's bench trial that the cannabis weighed 2736 grams and stipulated at defendant's sentencing hearing that the street value of the cannabis was $40,000.

¶ 8        Following the hearing, the trial court denied the motion to suppress. The trial court found that there was probable cause to stop defendant's vehicle for violation of the statute requiring that a license plate be attached to the rear of defendant's trailer. Further, the canine free air sniff gave Albee probable cause to search defendant's vehicle for contraband. The trial court did suppress one statement that defendant made after being placed in Deputy Erickson's vehicle.

¶ 9        The case then proceeded to a bench trial. As noted, the trial court found defendant guilty on all three counts and sentenced defendant to 14 years' imprisonment. The trial court subsequently denied defendant's posttrial motion challenging the trial court's order denying defendant's motion to suppress.

¶ 10       On appeal, defendant argued that his trial counsel was ineffective for failing to move to suppress the cannabis on the basis that the positive canine alert, without more, was not sufficient to establish probable cause following changes to cannabis legislation in Illinois. Specifically, the legislature had enacted the Compassionate Use of Medical Cannabis Pilot Program Act (Act) in 2014, legalizing possession of cannabis for those licensed by the State to use it for medical purposes (410 ILCS 130/1 *et seq.* (West 2014)). In 2016, the legislature decriminalized the possession of less than 10 grams of cannabis (720 ILCS 550/4(a) (West 2016)). Based upon the 2014 and 2016 legislation, defendant claimed that all adult Illinoisans were allowed to possess less than 10 grams of cannabis, so that the canine alert to his semitrailer indicated only that the vehicle might contain a substance that defendant was allowed to possess. Defendant maintained that this was not sufficient to establish probable cause. Albee had only a "hunch" that defendant was involved in some sort of criminal activity, which was not sufficient to support probable cause under the fourth amendment.

¶ 11       The appellate court rejected defendant's claim of ineffective assistance of counsel and affirmed his conviction and sentence. 2022 IL App (4th) 210726-U. The appellate court first noted that " 'all adult Illinoisians' " were not allowed to possess less than 10 grams of cannabis after the legislature decriminalized such possession, as decriminalization was not synonymous with " 'legalization.' " *Id.* ¶ 35. After decriminalization, cannabis continued to be contraband, and its possession remained illegal. *Id.* A positive canine alert for contraband constituted probable cause to search a vehicle. *Id.* ¶ 37. Albee's canine was certified in the

detection of narcotics, including cannabis, crack cocaine, methamphetamine, heroin, and ecstasy. *Id.* Because Albee's canine alerted to the presence of at least one of those illegal substances, probable cause existed for the search of defendant's vehicle. *Id.* Consequently, had defendant's trial counsel filed a motion to suppress on the basis that the canine search did not constitute probable cause, that argument would have been denied. *Id.* For that reason, defendant could not show that he was prejudiced by counsel's failure to raise that argument, as necessary to sustain a claim of ineffective assistance of counsel. *Id.*

¶ 12    This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 13                                ANALYSIS

¶ 14    In this court, defendant again argues that he received ineffective assistance of counsel when trial counsel failed to move to suppress the cannabis based upon changes to cannabis legislation in Illinois. Defendant claims that in light of those changes, a positive canine alert to cannabis on its own did not provide probable cause for the search. Although defendant's argument in the appellate court focused on legislation decriminalizing possession of less than 10 grams of cannabis, defendant focuses his ineffective assistance of counsel claim in this court on the Act.

¶ 15    This court has long held that the use of drug-sniffing dogs to detect the presence of narcotics is an acceptable method to establish probable cause. *People v. Campbell*, 67 Ill. 3d 308, 315-16 (1977). In addition, the odor of cannabis emanating from a car, standing alone, creates probable cause to search. *People v. Stout*, 106 Ill. 2d 77 (1985). Defendant acknowledges the *Campbell* and *Stout* decisions but argues those decisions are no longer good law following passage of the Act.

¶ 16    Defendant notes that the Act created a class of lawful cannabis users and established an identification card system for qualifying participants. 410 ILCS 130/7(1), 10(d), 15(b) (West 2018). The Act specifically exempted qualified, registered participants from "arrest, prosecution, or denial of any right or privilege" if they possessed cannabis within the amount allotted to them under the Act. *Id.*

§ 25(a)-(c). Defendant claims that, in legalizing cannabis for some individuals, the Act changed the probable cause analysis concerning the detection of cannabis by drug-sniffing canines. Defendant argues that, following passage of the Act, an alert by a dog trained on cannabis did not give officers probable cause to search without first ascertaining whether defendant was allowed to have cannabis in his vehicle. Given that the Act had been in effect for six years at the time of defendant's trial, defendant argues that his attorney was ineffective for failing to file a motion to suppress the search of defendant's semitrailer on those grounds.

¶ 17        Defendant also cites *People v. Hill*, 2020 IL 124595, in support of his claim that the dog sniff in this case did not provide probable cause to search defendant's vehicle. In *Hill*, the defendant argued that the legalization of medical cannabis and the decriminalization of small amounts of cannabis altered the power of the police to conduct warrantless searches of vehicles based solely on the odor of raw cannabis. *Id.* ¶ 15. The defendant in *Hill* asked this court to overrule *Stout*. *Id. Hill* found it unnecessary to decide the continued validity of *Stout* because the officer in *Hill* relied on more than the odor of raw cannabis in making his probable cause determination. *Id.* ¶¶ 15-16. Although the court did not reach the issue of whether the odor of cannabis, standing alone, is sufficient to establish probable cause, *Hill* stated that the "smell and presence of cannabis undoubtedly remains a factor in a probable cause determination." *Id.* ¶ 18 n.2. *Hill* agreed with the defendant that possession of cannabis is not contraband for medical users but noted that such users still must possess and use the cannabis in accordance with the Act and the Illinois Vehicle Code (625 ILCS 5/11-502.1(a)-(c) (West 2016)). *Hill*, 2020 IL 124595, ¶ 34. In finding that the officer had probable cause to search the defendant's vehicle based upon the facts of the case, the court agreed that "the Act somewhat altered the status of cannabis as contraband." *Id.* ¶ 26.

¶ 18        Defendant seizes upon *Hill*'s statement that "the Act somewhat altered the status of cannabis as contraband" in support of his claim that trial counsel was ineffective in failing to move to suppress the cannabis based upon the Act. Defendant points out that the *Hill* opinion was filed seven months prior to the hearing on defendant's motion to suppress, so trial counsel should have been aware of the opinion. Defendant argues that counsel should have moved to suppress the cannabis based upon the Act, as well as *Hill*'s express acknowledgment concerning

the impact of the Act, and that the failure to do so constituted ineffective assistance of counsel.

¶ 19    In addressing defendant's argument, it is important to first clarify what is and what is not at issue in this case. Defendant argues that this court should hold that, following passage of the Act, a dog sniff alone no longer provides probable cause to search and that the *Campbell* and *Stout* decisions should be overruled. Defendant then argues that his counsel was ineffective in failing to file a motion to suppress based upon those changes to the law.

¶ 20    To the extent defendant is arguing that the Act changed probable cause analysis concerning the detection of cannabis by drug-sniffing canines, that issue is not before this court. Nor is the issue of whether *Campbell* and *Stout* should be overruled before us. Rather, the issue before this court is whether counsel was ineffective in failing to file a motion to suppress the cannabis based upon the Act.

¶ 21    It is well settled that a criminal defendant has the right to the effective assistance of counsel under both the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Peterson*, 2017 IL 120331, ¶ 79. This court has adopted the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to judge a defendant's ineffective assistance of counsel claim. *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Accordingly, to prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Peterson*, 2017 IL 120331, ¶ 79. A defendant's failure to satisfy either prong of the *Strickland* standard precludes a finding of ineffective assistance of counsel. *Id.*

¶ 22    To establish deficient performance, a defendant must prove that counsel's performance, judged by an objective standard of competence under prevailing professional norms, was so deficient that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. *People v. Bew*, 228 Ill. 2d 122, 127-28 (2008). A defendant must overcome the strong presumption that counsel's challenged action or inaction was the product of sound trial strategy. *People v. Dupree*, 2018 IL 122307, ¶ 44. In evaluating an attorney's performance for purposes of an ineffective assistance of counsel claim, that performance must be

evaluated from counsel's perspective at the time the contested action was taken. *People v. Bailey*, 232 Ill. 2d 285, 289 (2009). An attorney will not be deemed deficient for failing to make an argument that has no basis in the law. *People v. King*, 192 Ill. 2d 189, 197 (2000).

¶ 23       The decision whether to file a motion to suppress is generally a matter of trial strategy entitled to great deference. *People v. White*, 221 Ill. 2d 1, 21 (2006). To establish prejudice when an ineffective assistance claim is based on trial counsel's failure to file a suppression motion, a defendant must demonstrate that the unargued suppression motion was meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed. *People v. Henderson*, 2013 IL 114040, ¶ 15. This court's standard of review for determining whether a defendant was denied the effective assistance of counsel is *de novo*. *People v. Johnson*, 2021 IL 126291, ¶ 52.

¶ 24       Defendant argues that trial counsel should have moved to suppress the cannabis on the ground that the underlying search of his vehicle was unlawful. Our state constitution and the federal constitution protect against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A search generally is *per se* unreasonable if it is conducted without a warrant supported by probable cause and approved by a judge or magistrate. *Hill*, 2020 IL 124595, ¶ 20. There are recognized exceptions to the general rule, however, including an exception for searches of vehicles. *Id.* ¶ 21. A warrantless search of a vehicle is not *per se* unreasonable given the "transient nature" of a vehicle that "often renders it impracticable to secure a warrant before the automobile escapes the jurisdiction in which the warrant must be sought." *Id.*

¶ 25       An officer's search of a vehicle, however, still must be supported by probable cause. *Id.* ¶ 22. In determining whether probable cause to conduct a warrantless search of an automobile exists, an officer may rely on his law-enforcement training and experience to make inferences that might evade an untrained civilian. *Id.* ¶ 23. Probable cause requires a showing that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity. *Id.* Because probable cause deals with probabilities, not certainties, probable cause does not require an officer to rule out any innocent explanations for suspicious

facts. *Id.* ¶ 24. Probable cause "requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability 'that certain items may be contraband or stolen property or useful as evidence of a crime.' " *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

¶ 26    As discussed, *Campbell* held that the use of dogs trained in the detection of narcotics is a permissible method of establishing probable cause. *Campbell*, 67 Ill. 2d at 315-16. *Stout*, 106 Ill. 2d at 87, similarly held that a police officer's detection of the odor of cannabis from a defendant's vehicle, without additional corroboration, also was a "permissible method of establishing probable cause" for a warrantless search.

¶ 27    With the preceding authority in mind, we turn to defendant's argument. As noted, defendant asserts that trial counsel should have filed a motion to suppress on the ground that the canine sniff alone could no longer provide probable cause to search his vehicle following changes to the cannabis laws in Illinois and this court's decision in *Hill*. For the following reasons, we find that defendant cannot demonstrate ineffective assistance of counsel based upon the unargued motion to suppress.

¶ 28    We first note that the *Hill* decision would defeat, rather than support, a motion to suppress based upon changes to Illinois's cannabis legislation in this case. As discussed, the *Hill* court found that the officer relied on more than the odor of raw cannabis in making his probable cause determination, so that it need not address *Stout*. The officer in *Hill*, 2020 IL 124595, ¶ 5, testified that he activated his lights to stop the defendant's vehicle based upon a reasonable belief that the defendant's passenger was a known fugitive. The defendant drove for a few blocks before finally stopping. The officer testified that, based on his experience and training, vehicles that take a while to stop often are concealing or destroying contraband or producing a weapon. *Id.* When the officer approached the passenger side of the vehicle, the passenger lowered the window, and the officer immediately smelled a strong odor of raw cannabis. *Id.* The officer saw a bud of cannabis in the back seat and initiated a search of the vehicle, which revealed a small amount of cannabis and a small rock that tested positive for crack cocaine. *Id.* ¶¶ 7, 10.

¶ 29    As in this case, the defendant in *Hill* argued that the legalization of medical cannabis and the decriminalization of small amounts of cannabis altered the power of the police to conduct a warrantless search based solely on the odor of raw cannabis. *Id.* ¶ 15. The defendant therefore argued that this court's decision in *Stout* should be overruled. *Id.* Because the officer considered more than the odor of raw cannabis in deciding to search the defendant's vehicle, however, this court held that it need not address the validity of *Stout* following changes to Illinois's cannabis legislation. *Id.* ¶ 18. The court held that it would instead consider whether the totality of circumstances supported a finding of probable cause. *Id.*

¶ 30    In this case as well, Albee relied on more than the dog sniff in conducting his search of defendant's vehicle. The totality of the facts and circumstances known to Albee at the time of the search would justify a reasonable person in believing that the vehicle contained contraband or evidence of criminal activity. Those facts and circumstances included more than the positive canine alert. Albee testified that defendant's semitrailer did not comply with federal motor carrier safety regulations requiring the company name or the DOT number on the driver's side; the car hauler was only partially loaded with vehicles, even though car haulers are expensive to operate; there was no registration displayed on the trailer; defendant appeared to be in a state of panic; defendant lacked the usual binder of information including a cab card, vehicle insurance information, and other documents; defendant gave Albee unnecessary items, including bills for tire repairs; defendant volunteered that he had been stopped several times during his trip and that his vehicle had been checked for drugs; and defendant's Illinois apportioned cab card did not match the displayed California license plate. Albee testified that, based upon these facts, he reasonably believed that defendant was involved in some type of criminal activity.

¶ 31    The totality of facts and circumstances known to Albee at the time of the search distinguishes this case from the *Campbell* and *Stout* decisions. Albee relied on more than the positive canine alert in deciding to search defendant's vehicle. Given the extensive evidence supporting Albee's search of defendant's vehicle independent of the positive canine alert, Albee had probable cause to search defendant's vehicle.

¶ 32    In so holding, we note that defendant consistently argues that the canine in this case was trained on cannabis and alerted to cannabis and that the alert to cannabis could not provide probable cause to search following passage of the Act. This is

misleading, as the evidence established that the canine was trained to alert to crack cocaine, methamphetamine, heroin, and ecstasy, as well as cannabis. There was no evidence or testimony that the canine would alert differently to the different drugs. Accordingly, at the time of the search, Albee only knew that the canine had alerted to contraband. Albee did not know whether that contraband was crack cocaine, methamphetamine, heroin, ecstasy or cannabis. That Albee discovered cannabis upon searching the vehicle does not alter the information available to Albee at the time of the search. As the appellate court in this case correctly recognized, "[b]ecause Albee's canine alerted to the presence of at least one of the foregoing illegal substances, probable cause existed for the search of defendant's vehicle." 2022 IL App (4th) 210726-U, ¶ 37.

¶ 33        Because there was probable cause to search defendant's semitrailer based upon the totality of circumstances, as well as the canine's positive alert to contraband, a motion to suppress on the ground that a canine alert to cannabis did not provide probable cause would have been unsuccessful. Trial counsel was not objectively unreasonable in failing to file a futile motion to suppress, and defendant suffered no prejudice from counsel's decision not to do so. Defendant's ineffective assistance of counsel claim fails under either prong of *Strickland*, as he cannot establish that his counsel's performance was deficient or that defendant was prejudiced by counsel's failure to file a motion to suppress.

¶ 34        Finally, even if we were to assume that Albee solely relied upon the canine's positive alert in conducting his search, and disregard the fact that Albee's canine was trained to alert to other contraband in addition to cannabis, the unargued motion to suppress would have been denied. This court's precedent at the time trial counsel filed defendant's motion to suppress held that a positive alert from a drug-sniffing canine, without more, was sufficient to establish probable cause to search. Despite defendant's arguments concerning changes to the case law following passage of the Act, *Campbell* and *Stout* remain binding authority. To date, this court has not had an opportunity to directly address the validity of the *Campbell* and *Stout* decisions following the changes to cannabis legislation in Illinois. Accordingly, our circuit and appellate courts are bound to apply that precedent to the "facts of the case before them under the fundamental principle of *stare decisis*." *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. Had counsel filed a motion to suppress the cannabis in this case on the basis that the canine sniff, without more, did not establish probable

cause to search following passage of the Act, the trial court would have been bound to apply *Campbell* and *Stout* and would have denied that motion. As we noted above, an attorney will not be deemed deficient for failing to make an argument that has no basis in law. *King*, 192 Ill. 2d at 197.

¶ 35 Because the canine alert in this case provided probable cause to search defendant's vehicle, a motion to suppress the evidence obtained from that search would not have been meritorious. For that reason, defendant cannot establish ineffective assistance of counsel under either prong of *Strickland*. Trial counsel's performance, judged by an objective standard of competence under prevailing professional norms, was not so deficient that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. Nor was defendant prejudiced by counsel's failure to file a motion to suppress. We therefore affirm the appellate court's judgment rejecting defendant's ineffective assistance of counsel claim.

¶ 36                                         CONCLUSION

¶ 37 For all of the foregoing reasons, we affirm the judgment of the appellate court rejecting defendant's claim of ineffective assistance of counsel and affirming the judgment of the trial court.

¶ 38 Judgments affirmed.